

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| SHAKIMA JACKSON,<br>　　　　　Plaintiff,<br><br>vs.<br><br>MARTIN J. O'MALLEY, *Commissioner of*<br>*the Social Security Administration*,<br>　　　　　Defendant. | §<br>§<br>§<br>§<br>§　CIVIL ACTION NO. 5:23-4475-MGL<br>§<br>§<br>§<br>§ |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION,
REVERSING DEFENDANT'S DECISION TO DENY BENEFITS,
AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

This is a Social Security appeal in which Plaintiff Shakima Jackson (Jackson) seeks judicial review of the final decision of Defendant Martin J. O'Malley, Commissioner of the Social Security (O'Malley), denying her claim for continuing supplemental security income (SSI). Jackson is representing herself.

The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting O'Malley's decision be reversed and this matter be remanded. The Magistrate Judge filed the Report in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo

determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on July 8 2024, and O'Malley filed his objections to the Report on August 13, 2024. The Court has carefully reviewed the objections, but holds them to be without merit. It will therefore enter judgment accordingly.

Jackson filed an application for SSI on August 30, 2002. Her application was denied initially and upon reconsideration. She subsequently requested a hearing before an Administrative Law Judge (ALJ), which occurred on October 27, 2004. In the ALJ's November 10, 2004 decision, he determined Jackson was disabled, finding the severity of her mental impairments met the requirements for the relevant Listing.

After Jackson failed to attend two consultative examinations to determine whether she was still disabled, the Social Security Administration (SSA) sent Jackson a Notice of Disability Cessation on October 12, 2018, finding her no longer disabled as of August 2018 and informing her of the right to appeal. Jackson filed a request for reconsideration.

The Court will omit some of the procedural history because it is unnecessary for this Order. As is relevant here, after the ALJ conducted a hearing on March 23, 2023, he issued an unfavorable decision on April 21, 2023, finding once again Jackson's disability ended in August 2018, and she had not become disabled again since that date. She requested review of the decision from the Appeals Council, which was denied.

She filed a complaint in this Court on September 6, 2023, and later filed an amended complaint, dated September 11, 2023.

Entitlement to Social Security benefits is subject to periodic review. 20 C.F.R. § 416.994(a). To determine if a claimant's disability continues, the ALJ follows a seven step procedure. 20 C.F.R. § 416.994.

First, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals a listed impairment. 20 C.F.R. §§ 416.920(d), 416,925, 416.926. If so, the claimant's disability continues. 20 C.F.R. § 416.994(b)(5)(I).

Second, the ALJ must determine whether medical improvement occurred. *Id*. If so, the analysis proceeds to step three. If not, the analysis proceeds to step four.

At step three, the ALJ must determine if the medical improvement relates to the ability to perform work. 20 C.F.R. § 416.994(b)(5)(iii). If so, the analysis skips step four and proceeds to step five.

At step four, the ALJ must determine if an exception to medical improvement applies. 20 C.F.R. § 416.994(b)(5)(iv). If an exception from the first group applies, the analysis proceeds to step five. If an exception in the second group applies, the claimant's disability ends. If no exception applies, the claimant's disability continues. See 20 C.F.R. §§ 416.994(b)(3) and (4).

At step five, the ALJ must determine whether all the claimant's current impairments in combination are severe. 20 C.F.R. § 416.994(b)(5)(v). If they do not significantly limit the claimant's ability to work, the claimant's disability ceases. If they do significantly limit the claimant's ability to work, the analysis proceeds to step six.

At step six, the ALJ must assess the claimant's residual functional capacity (RFC) based on the current impairments and determine if the claimant can perform past work. 20 C.F.R. § 416.994

(b)(5)(vi). If the claimant can perform past work, disability has ended. If not, the analysis proceeds to step seven.

At the seventh and final step, the ALJ must determine if other work exists in the national economy that the claimant can perform given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 416.994(B)(5)(vii). If such work exists, the claimant is no longer disabled. If such work does not exist, the claimant's disability continues.

"A claimant seeking a ruling of disability bears the burden of proving . . . [she] is disabled. That burden continues even after an initial determination of disability." *Iida v. Heckler*, 705 F.2d 363, 365 (9th Cir. 1983).

"After the initial determination of disability is made, however, the claimant is entitled to a presumption that his or her disability still exists. Therefore, to terminate disability benefits, the [Social Security Commission] has the burden of coming forward with evidence . . . the claimant's condition has improved since the initial disability determination." *Id*. "In the absence of proof to the contrary, it is presumed that the condition remains unchanged." *Id*.

It is the task of the ALJ, not this Court, to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "It is not within the province of this [C]ourt to determine the weight of the evidence; nor is it [the Court's] function to substitute [its] judgment for that of [the defendant] if [the] decision is supported by substantial evidence." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

"And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted) (internal quotation marks omitted).

Consequently, the Court "must sustain the ALJ's decision, even if [it] disagree[s] with it, provided the determination is supported by substantial evidence." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). Under the substantial evidence standard, the Court must view the entire record as a whole. *Steurer v. Bowen*, 815 F.2d , 1249, 1250 (8th Cir. 1987).

Although ALJs must sufficiently explain the reasons for their rulings to allow this Court to provide meaningful review, *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013), "the ALJ is not required to address every piece of evidence[;] [instead,] he must . . . build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citations omitted). The Court's "general practice, which [it] see[s] no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir.2005).

"[T]he substantial evidence standard presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988) (citations omitted) (internal quotation marks omitted) (alteration omitted). Put differently, if the ALJ's "dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported." *Kellough v. Heckler*, 785 F.2d 1147, 1149 (4th Cir. 1986).

With this legal framework in mind, the Court will consider O'Malley's three objections to the Report. In his first objection, he maintains that, "despite [Jackson's] pro se status, the Court should apply the rules of forfeiture and decline to consider the issues raised sua sponte" by the Magistrate Judge. Objections at 3.

As the Court already noted, at this juncture, Jackson "is entitled to a presumption . . . her disability still exists." *Iida*, 705 F.2d at 365. O'Malley has the burden to show otherwise.

Although "the courts are not to try the case de novo. . . . they must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964) (citation omitted) (internal quotation marks omitted). And, although, "the courts are not to try the case de novo[,]" *id.*, the Court is required to "review de novo the legal principles upon which the Commissioner's decision is based." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

After scrutinizing the entire record and making a de novo review of the legal principles on which O'Malley relied to make his decision in this case, the Magistrate Judge concluded the ALJ erred. And, as the Court will detail below, the error is obvious, is purely legal, and the Court's refusal to address it would be unjust.

Therefore, the Court rejects any suggestion it is required to put its imprimatur, its stamp of approval, on the ALJ's decision, just because Jackson failed to specifically object to it. Thus, the Court will overrule O'Malley's first objection.

Second, O'Malley contends the Magistrate Judge "is mistaken on the merits because [she] relies on an inapplicable regulation." Objections at 3. The Magistrate Judge cites to 20 C.F.R. § 416.994a in support of her conclusion the ALJ should have applied the Listing in effect at

the time of the ALJ's November 10, 2004, decision, to determine whether Jackson's mental impairments continued to be presumptively disabling. The ALJ instead looked to the Listing as it is currently written.

According to O'Malley, however, "[t]he cited regulation . . . applies to continuing disability claims for disabled children, not disabled adults." Objections at 3 (citation omitted). He maintains that, "[b]ecause [Jackson] was found disabled when she was [thirty] years old, Section 416.994a does not apply to her case." *Id*. at 4 (citation omitted).

According to 20 C.F.R. § 416.994a(b)(2), when deciding whether a child is still disabled, the ALJ is to consider the impairment under "the same Listing used to make [the most recent favorable] determination or decision as it was written at that time, even if it has since been revised or removed from the Listings of Impairments." *Id*.

O'Malley is correct inasmuch as the Magistrate Judge cites to 20 C.F.R. 416.994a, which deals with continuing disability for disabled children instead of 20 C.F.R. 416.994, which deals with disabled adults.

As is pertinent here, 20 C.F.R. § 416.994(b)(2)(iv)(A) states, "[i]f medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work." *Id*.

The focus of 20 C.F.R. § 404.1594(c)(3)(I) is the continuation of disability insurance benefits (DIB), but it employs the same exact language as 20 C.F.R. § 416.994(b)(2)(iv)(A), which is concerned with the continuation of SSI benefits: "If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make

7

our most recent favorable decision, we will find that the medical improvement was related to your ability to work." *Id*. 20 C.F.R. § 404.1594(c)(3)(I).

In *Evans v. Commissioner of Social Security*, No. 6:18-cv-46-Orl-DC, 2019 WL 1317444, at *2 (M.D. Fla. Mar. 22, 2019), when interpreting the above-referenced language in a DIB case, the court noted "[t]he Commissioner argues . . . the foregoing language –'the same listing section used to make our most recent favorable decision'–refers to the relevant Listing section as it was previously written, and not as currently written." *Id*. That court accepted this argument and found the ALJ's determination the plaintiff's condition had undergone medical improvement was reversible error, where the ALJ failed to apply the medical evidence to the version of the pertinent Listing as it existed at the time the plaintiff was initially determined to be disabled. *Id*. 2-4.

But, the *Evans* court based its decision to accept the Commissioner's argument on *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984), which, until recently, required courts to defer to an agency's reasonable interpretation of an ambiguous statute. *Id*. at 844. But, *Chevron* was recently overruled by *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), which held the opposite: "courts . . . may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id*. at 2273.

Nevertheless, even without the deference that went along with *Chevron*, the Court still agrees with the Commissioner's argument in *Evans:* that "'the same listing section used to make our most recent favorable decision'–refers to the relevant Listing section as it was previously written, and not as currently written." *Evans*, 2019 WL 1317444, at *2.

It is commonsensical to employ the same words, the same standards, in a Listing when comparing the claimant's medical condition at the time of a finding of a disability and the reassessment of the disability. It is also a natural reading of the language in the regulation to do so.

And besides, "the same listing section" referenced in 20 C.F.R. § 416.994(b)(2)(iv)(A), and a differently-worded Listing section are two different things, even if the section numbers on the old Listing and the new Listing are the same.

Further, as per the Social Security Administration's Revised Medical Criteria for Evaluating Endocrine Disorders, 76 FR 19692-01, "[w]hen a person qualifies for disability benefits under a listing, we continue to use that same listing when we later determine if he or she is still disabled. See §§ 404.1594(c)(3)(I), 416.994(b)(2)(iv), and 416.994a(b)(2)." *Id*. "This rule applies even if we have removed or changed the listing since we last found that the beneficiary was disabled. For this reason, we will not find that a beneficiary's disability has ended solely because we have removed the . . . listings or any other endocrine disorder listing." *Id*.

Although this deals with endocrine disorders, not mental ones, it is instructive. It refers to the "same Listing" language at issue here, and cites to Section 416.994. Stating they will look at the same Listing when determining if one is still disabled, even if they have removed the Listing, establishes they will be looking at the Listing as it was previously written.

They fail to make any distinction between removed and changed Listings. Therefore, if they are going to look at a removed Listing as it was previously written when deciding upon disability, it seems to logically follow they are also to look at any changed listing as it was previously written when making a disability determination. Stated a different way, this regulation appears to direct the

9

ALJ to consider the claimant's medical impairments under the Listing in effect at the time the claimant was found to be disabled.

That was the holding of the court in *Pearson v. Berryhill*, No, 17-cv-6211-KM, 2018 WL 6696794, at *7 (D.N.J. Dec. 19, 2018).  Citing to the endocrine disorder material above, that court stated the ALJ erred in failing to consider the plaintiff's medical impairments under the Listing in effect at the time the plaintiff was found disabled, but that later had became obsolete.

Under the regulations, "the ALJ [was] required to use the 'same listing' applied in the original disability determination . . . to determine whether the claimant was still disabled[.]" *Id*. at *7.  The court emphasized that it was "not sufficient merely to note, as the ALJ did here, that the listing at the time of the initial finding of disability has been repealed.  Despite repeal, it remains relevant to the analysis." *Id*.

The Court agrees with the *Pearson* court's reasoning, but wishes to add this: Despite being changed, the Listing section at the time of the initial finding of disability also "remains relevant to the analysis." *Id*.

For all these reasons, although the Magistrate Judge "relie[d] on an inapplicable regulation[,]" Objections at 3, the Court is unable to agree she "is mistaken on the merits," *id*.  Instead, as she aptly stated in the Report, "the ALJ should have evaluated [Jackson's] mental impairments under the criteria of Listing 12.04 as it existed in 2004.  However . . . [he] evaluated [her] impairment under the subsequently revised mental impairment listings."  Report at 28-29.  Inasmuch as the ALJ erred in this regard, the Court will overrule O'Malley's second objection, too.

Third, O'Malley objects, "contrary to the [Magistrate Judge's] finding, the ALJ fully complied with the regulations that apply to adult continuing disability reviews." Objections at 4 (citation omitted).

To the extent O'Malley argues the ALJ appropriately considered whether Jackson satisfied Listing 12.04 as of the time of her Comparison Point Decision (CPD), Objections at 4, the Court disagrees. In support of this argument, O'Malley looks to the ALJ's Finding 6, found at Tr. 21.

In that Finding, the ALJ determined Jackson's medical improvement was related to her ability to work because "by August 9, 2018, the claimant's CPD impairments[ ] no longer met or medically equaled the same listing(s) that was met at the time of the CPD (20 CFR 416.994(b)(2)(iv)(A))." Tr. 21. The ALJ, however, includes no discussion of the requirements of Listing 12.04 as of the time of Jackson's CPD.

Rather, referring back to the prior Finding 4, concerning the analysis undertaken using the later Listing version, the ALJ simply found Jackson's impairments failed to "meet or medically equal the criteria of listings 12.04 or any other listing under 12.00 of the listings." Tr. 21 (finding records show "very little outpatient mental health visits" and benign and stable mental status evaluations).

O'Malley argues this brief discussion is sufficient, but the Court disagrees. Significantly, the ALJ neglects to provide any discussion of the requirements of Listing 12.04(A), either in the 2004 version or the 2018 version. This omission is particularly relevant because, as set out in full in the Report, subsections (A) and (B) of Listing 12.04 changed between 2004 and 2018. Report at 25-27.

O'Malley appropriately notes that one can satisfy Listing 12.04 by satisfying both A and B.

Accordingly, O'Malley submits, the ALJ was unrequired to include an evaluation of the earlier 12.04(B) requirements—the focus of the Report—because the ALJ adequately had explained how Jackson was unable to satisfy the earlier 12.04(A) requirements. Objections at 8 ("Because the ALJ reasonably found that the evidence did not satisfy Paragraph A's requirements, there was no need to consider whether the 2004 Paragraph B criteria were satisfied as well.").

Notably, a bipolar issue is one of the Paragraph A options in both versions. The 2004 version also contains a separate category for bipolar disorder that the ALJ found Jackson met. In recounting the prior ALJ's findings, O'Malley indicates Jackson had been found to have met the following portions of the listings: "'12.04A(1)a, c, f, g, h, I, and is at the 'marked' [level] in categories B2, 3, and 4[.]'" Objections at 6 (citing Tr. 149). Significantly, O'Malley's quotation of the prior ALJ's findings omits the finding that Jackson satisfied Listing 12.04A(3)—the bipolar portion of Listing 12.04A. Tr. 149 ("In particular, I conclude that the medical evidence establishes that the following portions of the listing are met: 12.04A(1) a, c, f, g, h, and I, and (3), and is in the 'marked' [ ] categories B2, 3, and 4.").

Prior Listing 12.04A(1) relates to "[d]epressive syndrome"; prior Listing 12.04(3) relates to "[b]ipolar syndrome." The April 2023 ALJ decision also found bipolar disorder to be a severe impairment. In his decision, though, he neglected to analyze whether Jackson suffered from a Listing-level bipolar disorder under either version of the Listing. Without a discussion of why the ALJ found Jackson satisfied, or failed to satisfy, one or more of the subsection A requirements, it is far from a foregone conclusion that it was unnecessary to examine the 2004 subsection B requirements. On remand, the ALJ must undertake an analysis of the 2004 version of Listing 12.04.

Finally, as the Court noted above, in *Evans*, the Commissioner argued "'the same listing section used to make our most recent favorable decision'–refers to the relevant Listing section as it was previously written, and not as currently written." *Evans*, 2019 WL 1317444, at *2. But here, O'Malley makes the opposite argument and maintains "the ALJ fully complied with the regulations[,]" Objections at 4, although the ALJ looked to the Listing 12.04 as it is currently written in determining whether Jackson is still disabled.

Is this contradiction by the Commissioner troubling to the Court? Yes, of course it is. But the Court will save for another day the question of whether O'Malley can be estopped or precluded from making contradictory arguments to different courts on this same legal issue. In light of the discussion above, it is unnecessary for the Court to reach that question here.

Suffice it to say, as the Court has already stated, the ALJ erred in "evaluat[ing] [Jackson's] impairment under the subsequently revised mental impairment listings." Report at 29. And, because the ALJ failed to apply the evidence in the record to the correct version of Listing 12.04, the Court is unable to agree with O'Malley that "the ALJ fully complied with the regulations that apply to adult continuing disability reviews." Objections at 4 (citation omitted). Accordingly, the Court will overrule O'Malley's third objection, as well.

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules O'Malley's three objections, adopts the Report, and incorporates it herein. It is therefore the judgment of the Court O'Malley's decision is **REVERSED** and this matter is **REMANDED** for further proceedings.

**IT IS SO ORDERED**.

Signed this 26th day of August, 2024, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE